UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ANTHONY SCLAFANI,

    Plaintiff,

v.

CITY OF MARGATE,

    Defendant.

_____/

## COMPLAINT

Plaintiff, ANTHONY SCLAFANI, by and through his undersigned counsel, sues the Defendant, CITY OF MARGATE, and alleges as follows:

### JURISDICTION AND VENUE

1. This is an action for damages and to remedy violations of the rights of SERGEANT SCLAFANI under the Age Discrimination in Employment Act of 1967, as amended, 29 USC § 621, et seq, ("ADEA") and the Florida Civil Rights Act of 1992 ("FCRA") to redress injuries done to him by the Defendant, CITY OF MARGATE.

2. The unlawful acts which gave rise to this Complaint occurred within Broward County, Florida during the term of Plaintiff's employment with Defendant, making venue proper in this District pursuant to 28 U.S.C. § 1391.

### PARTIES

3. At all times material hereto, Plaintiff has been a citizen and resident of Broward County Florida and is otherwise *sui juris*.

1

4. As an individual over the age of 40, Plaintiff is a member of a protected class under the ADEA and the FCRA because the terms, conditions, and privileges of his employment were altered because of his age.

5. Defendant is a government agency. At all times material hereto, Defendant was Plaintiff's employer as defined by law.

6. At all times material hereto, Defendant has employed 20 or more employees for each working day in each of twenty or more calendar weeks in the current or preceding year in accordance with the ADEA and FCRA.

7. Plaintiff has exhausted his administrative remedies by filing a timely charge of discrimination against the Defendant with the Equal Employment Opportunity Commission.

8. Plaintiff's charge was filed within 300 days after the last instance of discrimination occurred.

9. Plaintiff was issued a Notice of Right to Sue on March 16, 2022. This suit is filed in accordance with that Notice and within the applicable ninety-day time limitation (a copy of the Notice is attached hereto as Exhibit "A").

10. All conditions precedent to the maintenance of this action by Plaintiff have occurred or have been waived.

11. Plaintiff has retained the undersigned law firm as his legal counsel in connection with this action and is obligated to pay reasonable attorney's fees and all costs incurred in connection with this action.

**GENERAL ALLEGATIONS COMMON TO ALL COUNTS**

12. Plaintiff began working for Defendant as a police officer in September of 1996. At the time of hire, Plaintiff was 32 years old. The Defendant promoted the Plaintiff to Police Sergeant

2

on October 5, 2015. The Plaintiff had an impeccable record until mid-2019 when the Defendant promoted then-Lieutenant Joseph Galaska to Captain and reassigned him to the same road patrol division as the Plaintiff. Currently the Plaintiff works as a road patrol supervisor on an overnight shift.

13. Plaintiff's primary duties and responsibilities include supervision of officers and road patrol.

14. At all times relevant hereto, Defendant regarded Plaintiff as an individual who was over 40 years of age.

15. The problems started immediately after Defendant promoted Lieutenant Galaska (in his 40s) to Police Captain. At that time, the Plaintiff was approximately 56 years old. Captain Galaska began to target the Plaintiff based on his age. Captain Galaska protected the younger officers despite the fact that they frequently violated the Defendant's policies. Specifically, Captain Galaska emailed the night shift Sergeants and Lieutenants and directed them to tell their subordinates that they could meet with Captain Galaska during his weekly off duty details f they wanted to "discuss things."

16. During the same timeframe that Captain Galaska invited the younger officers to "discuss things," a small group of these younger officers were engaging in problem behaviors, including, but not limited to: racial profiling, aggressive driving, sleeping on duty, and failing to adhere to departmental policies, standing operating procedures, and general orders.

17. Captain Galaska regularly advised that repeated failure to follow certain policies would result in the supervising officers being held accountable for the failures of the subordinates to follow policies.

18.     The Plaintiff continued to mentor, train, and communicate with his subordinate officers on a daily basis. The officers were not responsive to any of the Plaintiff's efforts, instead continuing their insubordinate behavior. A few of these officers received corrective actions, but continued to commit the same violations.

19.     Plaintiff sought assistance from his direct supervisor, Lieutenant Young. Lieutenant Young assured the Plaintiff that they would work together to rectify the problems.

20.     Unfortunately, the problems on the platoon continued. Sergeant Wood began covering up complaints, destroying official documents, and sharing information with the officers that was meant only for the supervisors. He undermined Plaintiff and destroyed the Plaintiff's credibility. On one occasion, after Plaintiff wrote a negative performance annotation for an officer who violated department policy, Sergeant Young undermined Plaintiff by writing a positive performance annotation for that same officer. The Plaintiff informed Lieutenant Young about the problems with Sergeant Wood, and Lieutenant Young directed the Plaintiff to speak with Sergeant Wood and "get him on board." Plaintiff spoke with Sergeant Wood on numerous occasions, but he remained uncooperative.

21.     Captain Galaska began meeting with some of the problematic employees during his off-duty details. The officers claimed that the Plaintiff was a "problematic supervisor" when the Plaintiff made efforts to enforce department policies. Captain Galaska did not direct any of these men to follow their chain of command and meet with their Platoon Commander, Lieutenant Young. Captain Galaska did not contact the Plaintiff to discuss any of the allegations.

22.     The Plaintiff requested a meeting with Captain Galaska and Lieutenant Young. During the meeting, the Plaintiff informed Captain Galaska that he was concerned for the safety of the officers as well as the citizens of Margate because the platoon was getting out of control

with their reckless driving and unauthorized vehicle pursuits. The Plaintiff explained that Sergeant Wood was providing information to subordinates that was meant only for supervisors. The Plaintiff told Captain Galaska that his subordinates displayed a lack of respect, failed to comply with uniform standards, were racially profiling citizens, and that complaints from citizens about officers were being received and discarded without investigation or corrective action. Captain Galaska did not ask any questions or offer any guidance or any support. The Plaintiff then suggested breaking up this clique of problematic officers. Captain Galaska responded, "I am not going to spread the cancer to the other platoons!" He then grinned and smugly said, "well Tony, it sounds like you have a coup on your hands." He folded his arms across his chest, stared at the Plaintiff, and didn't say another word. Lieutenant Young promised the Plaintiff that they would correct the problems with the platoon and asked the Plaintiff to be patient. The Plaintiff reminded him that they had been dealing with these issues for over eight months.

23. Over the next few weeks, the Plaintiff continued performing his duties and discussing the problems with Lieutenant Young. Lieutenant Young continued to assure the Plaintiff that he was aware of the problems within the platoon and the department and that they would be corrected. Shortly thereafter, Lieutenant Young left to attend the FBI Academy for three months. Lieutenant Young informed the Plaintiff that they had all the confidence in the world in his abilities to run the platoon, but that Captain Galaska was sending Lieutenant Fix in to supervise.

24. On October 04, 2019, Lieutenant Fix arrived on the platoon. Lieutenant Fix consistently treated the Plaintiff condescendingly in the presence of his subordinates and other supervisors. He would not communicate with the Plaintiff or even make eye contact with him. He took over the Plaintiff's pre-shift briefing. He also did not share specific platoon information with the Plaintiff prior to relaying the information to the subordinates, thereby undermining Plaintiff's

position as Sergeant. In front of Plaintiff's subordinates, Lieutenant Fix patronizingly ordered the Plaintiff to complete tasks. This humiliated the Plaintiff.

25.   During one incident, Sergeant Frankenhauser entered the briefing room to provide information to the night shift prior to going home. Lieutenant Fix told him to stop interrupting his briefing. Sergeant Frankenhauser advised him that it was not his briefing, but it was actually the Plaintiff's briefing.  Lieutenant Fix said, "no it's mine!" grabbing his lieutenant bars on his collar, putting them in the Plaintiff's face and stating in front of everyone in a condescending manner, "you see these, it's mine!" The entire platoon laughed at the Plaintiff's expense, once again humiliating the Plaintiff.

26.   On October 4, 2019, Lieutenant Fix directed the Plaintiff to write a brief synopsis of each officer in the platoon. Lieutenant Fix said that the synopsis would not be shared with the officers. The Plaintiff asked why he did not want to speak to either Sergeant Wood or the Plaintiff, as was customary, about the officers or issues on the platoon. Lieutenant Fix said, "Just do what you're told!" The Plaintiff completed the task with honesty and forthrightness and emailed it to him.

27.   On October 29, 2019, Lieutenant Fix called the Plaintiff into his office. Lieutenant Fix informed Plaintiff that Captain Galaska assigned him to the platoon in order to fix the platoon. Lieutenant Fix said that he spoke to the officers of the platoon and read each officer the synopsis written by the Plaintiff. The Plaintiff was shocked and concerned because this damaged his relationship with the officers and further undermined the Plaintiff's authority as a sergeant.

28.   Lieutenant Fix told Plaintiff that, based upon what the officers told him, the Plaintiff was the cause of the problems on the platoon. Lieutenant Fix spoke only with the problematic officers.  He did not speak with other officers, sergeants, or lieutenants who were assigned to the

platoon. He did not provide the Plaintiff with any specifics, instead saying that the officers did not like the way the Plaintiff came across and complained that he was a micromanager. The Plaintiff responded that Lieutenant Fix's evaluation had been biased and that he intended to file a grievance if Defendant moved him based upon Lieutenant Fix's evaluation.

29. The Plaintiff contacted Captain Palma, as he had done multiple times in 2019, to notify him about the violations that were occurring on the platoon. The Plaintiff also informed him that he was being harassed and it was causing him undue hardships. The Plaintiff asked why everyone was burying these violations and not doing anything. Captain Palma did not have any response. The Plaintiff advised him that he would be getting representation if the harassment continued or if the Defendant transferred him to another shift. The Plaintiff told him that Lieutenant Fix and Captain Galaska were harassing him, and Sergeant Wood was covering up complaints, destroying official documents, and sharing information with the officers that was meant only for the supervisors.

30. Lieutenant Fix and Sergeant Wood continued to allow officers to engage in misconduct with minimal or no consequences.

31. On November 15, 2019, Lieutenant Koneke sent the Plaintiff a text relating to an email he sent to Lieutenant Fix and Captain Galaska regarding Lieutenant Fix's reluctance to correct a problematic employee. Lieutenant Koneke was confused and dismayed and felt it was very unusual that there was such resistance and pushback on this matter.

32. The Plaintiff learned that Captain Galaska regularly spoke poorly about the Plaintiff to other officers, supervisors, detectives, and administrators. Captain Galaska said that the Plaintiff was a "tyrant," "untrustworthy," and "a bad supervisor." One of the Plaintiff's fellow supervisors, Sergeant Scott Dedi, told the Plaintiff that Captain Galaska spoke negatively about the Plaintiff so

frequently that Sergeant Dedi said, "Hey, Captain, you do realize he is my friend!" Captain Galaska's behavior continued to undermine Plaintiff and empower and embolden the officers to defy the Plaintiff.

33.     On March 13, 2020, Lieutenant Konecke issued the Plaintiff's yearly evaluation. The Plaintiff received the highest grade of outstanding, just as the Plaintiff received the previous year from Lieutenant Young. The Plaintiff and Lieutenant Konecke signed the evaluation and Lieutenant Konecke sent the evaluation up the chain to be reviewed and filed as is policy and customary.

34.     Approximately one month later, the Plaintiff learned that the Defendant was changing Plaintiff's evaluation. Captain Galaska was unhappy with the evaluation and wanted the narrative changed and the overall rating lowered. This was a significant departure from policy. Lieutenant Koneck informed the Plaintiff that he "battled" with the Captain, but to no avail. He also added that he changed the evaluation, signed it and placed the revised evaluation in the Plaintiff's mailbox for him to sign. When the Plaintiff read the changes, he was appalled at the narrative. The Plaintiff's original evaluation stated, "He willingly listens to other options suggested by subordinates, peers, and supervisors" but the revised evaluation stated "He generally accepts constructive input from his immediate supervisor but is less receptive to constructive input being offered by subordinates." The Plaintiff's original evaluation stated: "He has an excellent communication style" and "[h]e's approachable" but the revised evaluation stated, "He has a very direct communication style . . . However, that style of communication does not always work well with Millennial officers that comprise the majority of his Platoon. He needs to understand that Millennials don't respond well unless they know the 'why' about the direction they're being given." The new version of the Plaintiff's evaluation also included that "[h]e needs to be more in

tune with the idiosyncrasies of Millennial officers which will improve his relationships with his platoon members." The Plaintiff refused to sign the amended evaluation. The Plaintiff told Lieutenant Young that he disagreed with the evaluation and that he intended to write a rebuttal. Lieutenant Young suggested that instead of writing a rebuttal, the Plaintiff meet with Captain Galaska and Lieutenant Young. In response, the Plaintiff told Lieutenant Young that he was thinking of going to the Chief with a formal complaint.

35. Also in March 2020, the Plaintiff met with Chief Shaw. Prior to the meeting, Plaintiff sent Chief Shaw an email with a formal complaint expressing that Plaintiff felt discriminated against and subject to a hostile work environment. Chief Shaw provided no support and instead said that if the Plaintiff filed a formal complaint the higher ups would "come after him."

36. In May 2020, the Plaintiff met with Lieutenant Young and Captain Galaska. The meeting did not resolve anything as Captain Galaska assigned all blame to the Plaintiff and refused to address the issues raised by the Plaintiff.

37. A few days later, both Lieutenants Young and Konecke informed the Plaintiff that Captain Galaska and Lieutenant Fix were working on a rebuttal to counter the Plaintiff's rebuttal that they would affix to the Plaintiff's evaluation. However, the Plaintiff never did write a rebuttal because Lieutenant Young talked him out of it. This is not policy, past practice and has never been done. It is unheard of that a Captain and Lieutenant would so strongly object to an evaluation from another Lieutenant. In this rebuttal, Captain Galaska obtained input from Lieutenant Fix, who did not even supervise the Plaintiff during the applicable review period, but, instead, supervised the Plaintiff for two days per week over a 10-week period from October to December 2019 while Lieutenant Young attended the FBI National Academy. Lieutenant Fix stated that the Plaintiff had

a difficult time supervising young officers because of his "generational gap." The Plaintiff did not have issues with the younger officers except where they broke rules and violated the Defendant's policies.

38.     After a week went by, Lieutenant Young spoke with the Plaintiff, requesting that the Plaintiff not go to the Chief and instead meet with Captain Galaska again. The Plaintiff refused and strongly expressed that nothing would change, but over the next few days of coaxing and promises of support, the Plaintiff agreed.

39.     In April of 2020, Sergeant Vegotsky and the Plaintiff wrote Officer Sprouse's yearly evaluation and gave Officer Sprouse an overall rating of satisfactory, primarily due to the amount of corrective action and discipline issued during that rating period. They later learned that Captain Galaska was not happy with Sergeant Vegotsky and the Plaintiff's evaluation of Officer Sprouse. Captain Galaska said that he didn't want Officer Sprouse to receive a low rating and that he had conceded to not lowering the Plaintiff's evaluation rating and said that, "if they don't lighten up, I won't either."

40.     Captain Galaska continued to undermine Plaintiff. On February 18, 2021, Captain Palma told the Plaintiff that Captain Galaska was continuing to belittle the Plaintiff and refer to him as a "tyrant." Captain Palma asked the Plaintiff how long he was going to work and when was he leaving and that there were persons outside the department exerting pressure. The Plaintiff was informed that Captain Galaska and the crew were trying to get the Plaintiff written up for not following an email that Captain Galaska had written changing policy about counseling letters. The Plaintiff was accused of not sending it to the Captain first. The Plaintiff sent it through his chain of command to Lieutenant Bannatte since he was next in the chain of command. Additionally, Captain Galaska was no longer the Captain for the unit.

41. Lieutenant Young retired on June 30, 2021. Before his departure, he provided a sworn recorded statement to Lieutenant Suarez referencing the Plaintiff's complaint. He informed the Plaintiff that Lieutenant Suarez was not happy with his account because he confirmed many of the details of the Plaintiff's complaint. Lieutenant Young added that Captain Galaska would not be happy when he reads what Lieutenant Yound said. Lieutenant Suarez told him, "Dave, you know you just caused me tons of work."

42. In October 2021, the Internal Affairs Department directed the Plaintiff to look into an arrest where there was possibly missing marijuana. However, this task was beyond the scope of Plaintiff's assigned duties, and it caused him hardship. When the Plaintiff expressed his concerns, Internal Affairs continued to pressure him to continue the investigation.

43. Towards the end of 2021, Captain Galaska was made Acting Chief, then Interim Chief, and then became Chief in early 2022.

44. The Plaintiff's first sister passed away in November 2021 and his other sister passed away in January 2022. The Plaintiff requested additional bereavement time, but the Defendant denied it.

45. To this day, the Defendant continues to give the Plaintiff an additional workload in order to force him to retire early.

46. The Plaintiff suffers from depression and anxiety due to the Defendant's actions.

47. Plaintiff has engaged the undersigned attorney to prosecute his claims and is entitled to recover his attorney's fees from Defendant pursuant to statute.

## COUNT I: VIOLATION OF THE ADEA
**(Discrimination on the Basis of Age)**

48. Plaintiff incorporates herein the allegations contained in paragraphs 1 through 47, inclusive, as though same were fully re-written here.

49. Because Plaintiff is an older man, the Defendant discriminated against the Plaintiff, and the Defendant refused to take any action to prevent the discrimination.

50. Younger, similarly situated sergeants are not treated in the same manner as Defendant treated Plaintiff.

51. Younger, similarly situated sergeants are not permitted to be harassed, undermined, used as a scapegoat, and ostracized by their superiors, peers, and subordinates.

52. Upon information and belief, the Defendant takes seriously the complaints of younger, similarly situated employees.

53. Defendant did not have a legitimate, non-discriminatory reason for undermining Plaintiff's authority, using him as a scapegoat, and ostracizing him from his superiors, peers, and subordinates all while protecting younger problematic employees.

54. Defendant had no good faith basis for discriminating against the Plaintiff by treating him differently than younger employees. Defendant based its actions on Plaintiff's age, and Plaintiff is entitled to liquidated damages based on these actions.

WHEREFORE, Plaintiff hereby requests that this Court issue a declaratory judgment that the discrimination against Plaintiff by Defendant was a violation of Plaintiff's rights under the ADEA; require that Defendant make Plaintiff whole for his losses suffered as a result of the discrimination through reinstatement, or, if that is not practical, through an award of front pay; grant Plaintiff judgment against Defendant to compensate him for all lost wages and benefits, together with liquidated damages for Defendant's willful violation of the ADA, attorney's fees, costs, prejudgment and post judgment interest, and such other and further relief as this Court deems just and appropriate

**COUNT II: VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992**
**(Discrimination on the Basis of Age)**

55. Plaintiff realleges and adopts the allegations contained in paragraphs 1 through 47, inclusive, as though same were fully re-written here.

56. The acts of Defendant, by and through its agents and employees, violated Plaintiff's rights against age discrimination under the Florida Civil Rights Act, Chapter 760, FLA. STAT.

57. The discrimination to which Plaintiff was subjected was based on his age.

58. Because Plaintiff is an older man, he was discriminated against by the Defendant, and the Defendant refused to take any action to prevent the discrimination.

59. Because Plaintiff is an older man, the Defendant harassed him, undermined his authority, used him as a scapegoat, and ostracized him from his superiors, peers, and subordinates all while protecting younger problematic employees.

60. Upon information and belief, younger, similarly situated sergeants are not treated in the same manner as Defendant treated Plaintiff.

61. Upon information and belief, younger, similarly situated sergeants are not permitted to be harassed, undermined, used as a scapegoat, and ostracized by their superiors, peers, and subordinates.

62. Upon information and belief, the Defendant takes seriously the complaints of younger, similarly situated sergeants.

63. The conduct of Defendant and its agents and employees proximately, directly, and foreseeably injured Plaintiff.

64. Plaintiff is entitled to recover reasonable attorneys' fees and litigation expenses pursuant to 760.11(5), Florida Statutes.

65. Plaintiff has no plain, adequate or complete remedy at law for the actions of Defendant which have caused, and continue to cause, irreparable harm.

WHEREFORE, Plaintiff prays that this Court will issue a declaratory judgment that the discrimination against Plaintiff by Defendant was a violation of Plaintiff's rights under the FCRA; requiring that Defendant make Plaintiff whole for his losses suffered as result of the discrimination through reinstatement, or, if that is not practical, through an award of front pay; grant Plaintiff a judgment against Defendant for damages; award Plaintiff his reasonable attorney's fees and litigation expenses against Defendant pursuant to 760.11(5), Florida Statutes; and provide any additional relief that this Court deems just.

## COUNT III: VIOLATION OF THE ADEA
### (Age Discrimination – Hostile Work Environment)

66. Plaintiff realleges and adopts the allegations contained in paragraphs 1 through 47, inclusive, as though same were fully re-written here.

67. The ADEA prohibits inappropriate conduct in the workplace which leaves any person feeling harassed or discriminated against due to his age.

68. Here, Defendant's conduct occurred because of Plaintiff's legally protected characteristic, and the conduct was severe or pervasive enough to make a reasonable person of the same legally protected class believe that the conditions of employment were altered, and that the working environment was intimidating, hostile, or abusive.

69. Defendant's Employee/Manager/Supervisors, Captain Galaska and Lieutenant Fix, harassed Plaintiff based on his age, including harshly and unreasonably subjecting Plaintiff to unwarranted criticism, undermining his authority, using him as a scapegoat, ostracizing him from his superiors, peers, and subordinates, and repeatedly referencing "Millennials" and the "generation gap."

70. The harassment of Plaintiff included, but was not limited to, undermining Plaintiff's authority, refusing to enforce discipline issued by Plaintiff, and regularly authorizing circumvention of the chain of command.

71. The harassing actions of Defendant against Plaintiff constitute an adverse employment action for purposes of the ADEA. In subjecting Plaintiff to adverse employment action on the basis of his age, Defendant intentionally harassed Plaintiff with respect to the compensation, terms, conditions, or privileges of his employment.

72. The harassing conduct was directly connected to Plaintiff's age.

73. Plaintiff did not welcome Defendant's harassing conduct or comments.

74. Defendant abused its supervisory authority over Plaintiff by creating a hostile work environment. A reasonable person subjected to Plaintiff's working environment would believe Defendant's conduct was severe or pervasive enough to have altered the terms and conditions of employment and render the working environment intimidating, hostile, or abusive.

75. As a result of Defendant's violations of the ADEA, Plaintiff has suffered damages, including but not limited to past and future lost wages and humiliation.

76. Defendant had no good faith basis for discriminating against the Plaintiff by treating him differently than younger employees. Defendant based its actions on Plaintiff's age, and Plaintiff is entitled to liquidated damages based on these actions

WHEREFORE, Plaintiff hereby requests that this Court issue a declaratory judgment that the discrimination against Plaintiff by Defendant was a violation of Plaintiff's rights under the ADEA; require that Defendant make Plaintiff whole for his losses suffered as a result of the discrimination through reinstatement, or, if that is not practical, through an award of front pay; grant Plaintiff judgment against Defendant to compensate him for all lost wages and benefits,

together with liquidated damages for Defendant's willful violation of the ADEA, attorney's fees, costs, prejudgment and post judgment interest, and such other and further relief as this Court deems just and appropriate

## COUNT IV: VIOLATION OF THE FCRA
### (Age Discrimination – Hostile Work Environment)

77. Plaintiff realleges and adopts the allegations contained in paragraphs 1 through 47, inclusive, as though same were fully re-written here.

78. The FCRA prohibits inappropriate conduct in the workplace which leaves any person feeling harassed or discriminated against due to his age.

79. Here, Defendant's conduct occurred because of Plaintiff's legally protected characteristic, and the conduct was severe or pervasive enough to make a reasonable person of the same legally protected class believe that the conditions of employment were altered, and that the working environment was intimidating, hostile, or abusive.

80. Defendant's Employee/Manager/Supervisors, Captain Galaska and Lieutenant Fix, harassed Plaintiff based on his age, including harshly and unreasonably subjecting Plaintiff to unwarranted criticism, undermining his authority, using him as a scapegoat, ostracizing him from his superiors, peers, and subordinates, and repeatedly referencing "Millennials" and the "generation gap."

81. The harassment of Plaintiff included, but was not limited to, undermining Plaintiff's authority, refusing to enforce discipline issued by Plaintiff, and regularly authorizing circumvention of the chain of command.

82. The harassing actions of Defendant against Plaintiff constitute an adverse employment action for purposes of the FCRA. In subjecting Plaintiff to adverse employment

action on the basis of his age, Defendant intentionally harassed Plaintiff with respect to the compensation, terms, conditions, or privileges of his employment.

83. The harassing conduct was directly connected to Plaintiff's age.

84. Plaintiff did not welcome Defendant's harassing conduct or comments.

85. Defendant abused its supervisory authority over Plaintiff by creating a hostile work environment. A reasonable person subjected to Plaintiff's working environment would believe Defendant's conduct was severe or pervasive enough to have altered the terms and conditions of employment and render the working environment intimidating, hostile, or abusive.

86. As a result of Defendant's violations of the FCRA, Plaintiff has suffered damages, including but not limited to past and future lost wages and humiliation.

87. Defendant had no good faith basis for discriminating against the Plaintiff by treating him differently than younger employees. Defendant based its actions on Plaintiff's age, and Plaintiff is entitled to liquidated damages based on these actions.

WHEREFORE, Plaintiff hereby requests that this Court issue a declaratory judgment that the discrimination against Plaintiff by Defendant was a violation of Plaintiff's rights under the FCRA; require that Defendant make Plaintiff whole for his losses suffered as a result of the discrimination through reinstatement, or, if that is not practical, through an award of front pay; grant Plaintiff judgment against Defendant to compensate him for all lost wages and benefits, together with liquidated damages for Defendant's willful violation of the FCRA, attorney's fees, costs, prejudgment and post judgment interest, and such other and further relief as this Court deems just and appropriate

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted this 14th day of June, 2022

By: s/Michelle Cohen Levy
Michelle Cohen Levy, FBN 0068514
The Law Office of Michelle Cohen Levy, P.A.
4400 N. Federal Highway
Lighthouse Point, Florida 33064
P: (954) 651-9196
Michelle@CohenLevyLegal.com
Counsel for Plaintiff